Mod AO 442 (09/13) Arrest Warrant   AUSA Name & Telno: Samuel L. Raymond/Tara La Morte, Tel: 212-637-6519

# UNITED STATES DISTRICT COURT
for the
Southern District of New York

United States of America
v.
HUGH BRIAN HANEY

)
)  Case No.
)
)
)
)

*Defendant*

## ARREST WARRANT

To: Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)* HUGH BRIAN HANEY,

who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment  ☐ Superseding Indictment  ☐ Information  ☐ Superseding Information  ☒ Complaint
☐ Probation Violation Petition  ☐ Supervised Release Violation Petition  ☐ Violation Notice  ☐ Order of the Court

This offense is briefly described as follows:

18 USC 1956 (Money Laundering)
18 USC 1957 (Concealment Money Laundering)

Date: 7/17/19

*Issuing officer's signature*

City and state: New York, NY

Hon. Kevin Nathaniel Fox, USMJ
*Printed name and title*

---

**Return**

This warrant was received on *(date)* _____, and the person was arrested on *(date)* _____
at *(city and state)* _____.

Date: _____

_____
*Arresting officer's signature*

_____
*Printed name and title*

Approved: _____
SAMUEL L. RAYMOND/TARA M. La MORTE
Assistant United States Attorneys

Before: THE HONORABLE KEVIN NATHANIEL FOX
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA : **SEALED COMPLAINT**

 - v. - : Violations of
  18 U.S.C. §§ 1956, 1957,
HUGH BRIAN HANEY, : and 2

 Defendant. : COUNTY OF OFFENSE:
  NEW YORK

- - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

PAUL NUGENT, being duly sworn, deposes and says that he is a Special Agent with the Department of Homeland Security, Homeland Security Investigations ("HSI"), and charges as follows:

### COUNT ONE
### (Money Laundering)

1. From in or about January 2018 to in or about February 2018, HUGH BRIAN HANEY, the defendant, in an offense involving and affecting interstate and foreign commerce, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, conducted and attempted to conduct financial transactions which in fact involved the proceeds of specified unlawful activity, to wit, narcotics distribution in violation of Title 21, United States Code, Section 841, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, to wit, HANEY utilized the services of a currency exchanger to effect a series of deposits, transfers, and exchanges of Bitcoin, which involved the proceeds of narcotics trafficking, for United States currency.

(Title 18, United States Code, Section 1956(a)(1)(B)(i) and 2.)

## COUNT TWO
### (Engaging in Monetary Transactions In Property Derived From Narcotics Distribution)

2. From in or about January 2018 to in or about February 2018, HUGH BRIAN HANEY, the defendant, in the United States and in the special maritime and territorial jurisdiction of the United States, knowingly engaged and attempted to engage in a monetary transaction in criminally derived property of a value greater than $10,000 which in fact involved proceeds of specified unlawful activity, to wit, narcotics distribution, to wit, HANEY utilized the services of a currency exchanger to effect a series of deposits, transfers, and exchanges of more than $10,000 worth of Bitcoin, which involved proceeds of narcotics trafficking.

(Title 18, United States Code, Section 1957(a) and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

3. I am a Special Agent with HSI. In that capacity, I have participated in numerous investigations into money laundering, fraud, and other complex financial offenses, and have spoken with another HSI agent ("Agent-1"), who personally participated in the investigation of this matter along with other law enforcement agents.

4. I make this Affidavit in part on personal knowledge based on my participation in the investigation; review of reports and other documents prepared by law enforcement agents and others; and physical surveillance.

5. Throughout this Affidavit, where I assert that a statement was made, I was not the individual to whom the statement was made unless I specifically so state. Rather, information about the statement was provided by the specified law-enforcement officer to whom I have spoken or whose reports I have read and reviewed. Such statements are among many statements made by others and they are set forth in substance and in part, unless otherwise indicated.

6. Furthermore, the facts and circumstances of this investigation have been summarized for the specific purposes of this Affidavit. I have not attempted to set forth the complete

factual history of this investigation or all of its details. In making this Affidavit, I rely only on the facts stated herein.

### Cryptocurrency and Bitcoin

7. Based on my training, research, education, experience, and discussions with Agent-1, I am familiar with the following relevant terms and definitions:

   a. Bitcoin ("Bitcoin") is a type of cryptocurrency. Cryptocurrency is not issued by any government, bank, or (with limited exceptions) company; it is instead generated and controlled through computer software operating on a decentralized peer-to-peer network.

   b. Individuals can acquire cryptocurrencies like Bitcoin through, for example, exchange with other people. Individuals can also acquire cryptocurrencies by "mining," which involves using computers to compete to solve mathematical puzzles; the first miner to solve the puzzle wins newly minted, "mined" bitcoin from the network as a reward.

   c. Cryptocurrency is stored in[1] a "public address" and accessed using a "private key"; one might compare this to using a password to access the money one has stored in an online checking account. When cryptocurrency is transferred (e.g., spent) from one user to another, it moves from the sender's public address to the recipient's public address. Users frequently use digital "wallets" to store cryptocurrency and the associated public addresses and private keys, and to create and manage cryptocurrency transactions. These wallets might consist of software running locally on the user's computer, an app running locally on the user's smartphone, or software running in the cloud and accessed via the user's computer or smartphone app.

   d. Individuals can send and receive cryptocurrencies through peer-to-peer digital transactions (e.g., using wallet software) or by using a third-party broker. Such transactions require access to an internet enabled device, and can be performed on any such device, e.g.: computers, smart phones, or gaming consoles. Many cryptocurrencies including Bitcoin, record all transaction information in publicly

---

[1] Cryptocurrency is not technically "stored" in anything, but the phrase is used here for its conceptual clarity.

available ledgers that are posted to the internet. In the specific case of Bitcoin, this ledger is called the blockchain, and it is essentially a list of every bitcoin transaction that has ever occurred. It includes information such as the sender's public address, recipient's public address, transaction amount, and transaction date and time. Specific information about the identity of any individual involved in a transaction or controlling any of the public keys is generally not available.

### Silk Road

8. From my discussions with Agent-1, I have learned, among other things, that in or around October 2013, U.S. law enforcement seized a Dark Web site known as "Silk Road," where illegal drugs and other illicit goods and services were regularly bought and sold by the site's vendors and customers, and arrested its owner and operator ("Owner-1"), who was later convicted after a jury trial in this District of various offenses including narcotics distribution and money laundering, stemming from his operation of Silk Road from in or about January 2011, up to and including in or about September 2013. Evidence introduced at this trial and in related proceedings demonstrated the following, in substance and in part:

   a. Silk Road was designed to be an online criminal marketplace outside the reach of law enforcement or governmental regulation. First, Owner-1 operated Silk Road on what is known as "The Onion Router" or "Tor" network ("Tor"), a special network on the Internet designed to make it practically impossible to physically locate the computers hosting or accessing websites on the network. Second, Owner-1 required all transactions on Silk Road to be paid with Bitcoins.

   b. During its two-and-a-half years in operation, Silk Road was used by several thousand drug dealers and other unlawful vendors to distribute hundreds of kilograms of illegal drugs and other illicit goods and services to well over a hundred thousand buyers, and to launder hundreds of millions of dollars deriving from these unlawful transactions. All told, the site generated sales revenue totaling over approximately 9.5 million Bitcoins.

   c. From my discussions with Agent-1, I have learned, among other things, that based on his conversations with agents involved in the original Silk Road investigation and review of documents prepared by them, he knows the following concerning

the payment system used to process purchases made through the Silk Road site, in sum and substance and in part:

    i. The only form of payment accepted on Silk Road was Bitcoins.

    ii. Silk Road's payment system essentially consisted of a Bitcoin "bank" internal to the site, where every user had to hold an account in order to conduct transactions on the site.

    iii. Specifically, every user on Silk Road had a Silk Road Bitcoin address, or multiple addresses, associated with the user's Silk Road account. These addresses were stored on wallets maintained on servers controlled by Silk Road.

    iv. In order to make purchases on the site, the user first had to obtain Bitcoins and send them to a Bitcoin address associated with the user's Silk Road account.

    v. After thus funding his account, the user could then make purchases from Silk Road vendors. When the user purchased an item on Silk Road, the Bitcoins needed for the purchase were held in escrow (in a wallet maintained by Silk Road) pending completion of the transaction.

    vi. Once the transaction was complete, the user's Bitcoins were transferred to the Silk Road Bitcoin address of the vendor involved in the transaction. The vendor could then withdraw Bitcoins from the vendor's Silk Road Bitcoin address, by sending them to a different Bitcoin address, outside Silk Road, such as the Bitcoin addresses the vendor personally controls.

### Pharmville

9. One prominent narcotics vendor on Silk Road was called "Pharmville." The operators of Pharmville supplied a dedicated community of individuals who often traded illicit narcotics. According to Agent-1, he has reviewed multiple reports, drafted by agents and officers with the Drug Enforcement Administration ("DEA") in 2011 and 2012, describing controlled purchases of narcotics from the Pharmville vendor: a DEA law enforcement agent ordered narcotics, specifically oxycontin, by contacting the Pharmville vendor on Silk Road and ordering those narcotics from Pharmville; the DEA employees would provide a mailing address to receive the narcotics, and later in fact received those narcotics via the mail at the address provided.

10. On or about December 9, 2018, the Honorable Chelsey M. Vascura, United States Magistrate Judge, Southern District of Ohio, signed a search warrant for a home ("Haney's Residence") associated with HUGH BRIAN HANEY, the defendant.

11. Agent-1 has informed me that he participated in the search of Haney's Residence along with others. While there, Agent-1 met HUGH BRIAN HANEY, the defendant, and pursuant to the warrant, searched numerous electronic devices, including a silver Macbook (the "Laptop-1") with serial number -G66D, which was open and unlocked on a table in HANEY's living room. Agents also found a second silver Macbook ("Laptop-2") with serial number -MATM that would not turn on.

12. During a search of a forensic image of Laptop-2, Agent-1 and the other agents found numerous files, including word documents, some of which referred to the Pharmville community from Silk Road. From those files, Agent-1 concluded that it appears as if HUGH BRIAN HANEY, the defendant, was a high-ranking member or administrator of Pharmville.

13. From my discussions with Agent-1, I have learned, among other things, that among the files on Laptop-2 found by Agent-1 and the other members of the law enforcement team, was a file entitled "HBH Daily to Do List," in which someone, apparently HUGH BRIAN HANEY, the defendant, (whose initials are "HBH") wrote at length about his upcoming tasks; based on his training and experience, Agent-1 knows that some of the referenced tasks specifically relate to narcotics (for instance, "CP wants to trade Opana 40 mg ER for Fentanyl grams"; "Contin," "oxys," "ketamine," "fent").

### Haney's Accounts

14. From my discussions with Agent-1, I have learned, among other things, the following, based on Agent-1's review of business records from a company involved in the exchange of Bitcoins and other digital currency ("Company-1"):

    a. Company-1 maintains two platforms: a retail platform for individual customers that, among other things, enables them to transfer fiat currency to and from a traditional bank account; and a professional trading platform (the "Company-1 Platform").

6

b. On or about November 5, 2017, HUGH BRIAN HANEY, the defendant, opened an individual brokerage account at Company-1. Prior to approving the opening of his account at Company-1 (the "Company-1 Account"), and consistent with its "know your customer" policy, Company-1 required HANEY to submit his name, social security number, date of birth, and residential address; and to verify an e-mail address. Because HANEY also sought access to the Company-1 Platform, Company-1 further required him to submit a photograph.

c. In a series of transfers between on or about January 26, 2018 and on or about February 1, 2018, HANEY transferred a total of approximately 1,571.5 Bitcoins and approximately 1,572.7 in Bitcoin Cash[2] to the Company-1 Platform (the "Haney Bitcoin"). He then exchanged the Haney Bitcoin for a total of $19,147,057.[3]

d. In a series of electronic messages HANEY sent to Company-1, on or about March 27, 2018, HANEY made the following statements, in substance and in part:

i. HANEY stated that the Haney Bitcoins were among approximately 2000 Bitcoins he was "very lucky" to acquire "during the last half of 2011 and the beginning of 2012." He stated that he had consolidated those Bitcoins in January 2012 in

---

[2] Bitcoin Cash is a cryptocurrency comparable to Bitcoin. On August 1, 2017, the blockchain that reflects Bitcoin transactions experienced a "hard fork," or bifurcation, which produced an additional, separate, identical, parallel, and incompatible new blockchain reflecting transactions in Bitcoin Cash. Accordingly, as of August 1, 2017, anyone who owned Bitcoin was also in possession of the same number of Bitcoin Cash units. Bitcoin Cash trades on digital currency exchanges including Company-1. As set forth further below, Haney possessed the Bitcoin in question before the August 2017 fork, and so the Bitcoin Cash he transferred to Company-1 are directly traceable to and subject to forfeiture on the same grounds as, the Bitcoin that generated them.

[3] On or about May 30, 2018, Company-1 froze the Company-1 Account pending an internal investigation into Haney and the source of the bitcoins in the Company-1 Account. On or about November 19, 2018, United States Magistrate Judge Barbara Moses, of the Southern District of New York, issued a warrant authorizing seizure of the funds in the Company-1 Account (the "Seizure Warrant").

7

a single wallet hosted by Blockchain.info (the "Haney Wallet"), a company that, among other things, hosts Bitcoin wallets for customers. Haney attached a screenshot of the Haney Wallet (the "Screenshot"), which reflected four unique Bitcoin addresses it contained.

        ii.    HANEY stated that he made one withdrawal of some of these Bitcoins in 2013, but otherwise kept them in the Haney Wallet.

        iii.    HANEY stated that the source of these Bitcoins was his own "mining" of Bitcoins – which is the process by which new Bitcoins are created cryptographically – and from "individuals [he] met online." Haney stated that he had made an initial investment in Bitcoins of "less than ~$10,000 in toto," on the assumption that he was "buying from people who were also doing mining."

    e.    In truth and in fact, as described below in paragraphs 15 and 16, the Haney Bitcoin were not derived from mining activities, but rather from transfers from Silk Road.

### Transfers From Silk Road into the Haney Wallet

    15.    Agent-1 has informed me that based on his consultation of blockchain analysis software, and his review of information from the Silk Road Server and the blockchain, he knows that collectively, from in or about late November 2011 through early February 2012, HUGH BRIAN HANEY, the defendant, received at least approximately 3,892.9 Bitcoins directly or indirectly from Silk Road, of which approximately 1,392.9 remained in the Haney Wallet at the end of January 2012.

    16.    Agent-1 has informed me that the funds generated by HUGH BRIAN HANEY, the defendant, when he sold the Haney Bitcoin for cash using his Company-1 exchange account, as described above in paragraph 14(c), were seized pursuant to the Seizure Warrant from a custodial account at a bank ("Bank-1"), which was located in the Southern District of New York.

WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of HUGH BRIAN HANEY, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

_____
PAUL NUGENT
Department of Homeland Security
Homeland Security Investigations

Sworn to before me this
July 17, 2019

_____
THE HONORABLE KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

9